## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

MICHELE D. STEWART,                    )
                                       )
                 Plaintiff,            )
                                       )
vs.                                    )
                                       )        Case No.        CIV-05-1173-M
JO ANNE B. BARNHART,                   )
Commissioner of the Social             )
Security Administration,               )
                                       )
                 Defendant.            )

## FINDINGS & RECOMMENDATION
## OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her applications for supplemental security income benefits (SSI) under 42 U.S.C. §1382c(a)(3) and disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423 of the Act.   This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B), and for the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED**.

### PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI on February 20, 2003 alleging a disability since September 30, 1999 (TR. 50-52, 261-262). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 26, 27, 263, 264).  Pursuant to the Plaintiff's request, a hearing *de novo* was held before an administrative law judge (ALJ) on January 20, 2005 (TR. 286-321). The Plaintiff appeared in person and with her attorney and offered her testimony in support of the applications (TR. 289-315). A vocational expert (VE) also testified at the request of the ALJ (TR. 315-320).  The ALJ issued her decision on April 27, 2005 finding that

Plaintiff was not entitled to DIB or SSI (TR. 15-21).   The Appeals Council denied the Plaintiff's request for review on August 16, 2005, and thus, the decision of the ALJ became the final decision of the Commissioner. (TR. 5-7).

## STANDARD OF REVIEW

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (*citations omitted*).

## DISCUSSION & FINDINGS

In addressing the Plaintiff's disability applications the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520.  At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, so the process continued (TR. 20).  At step two, the ALJ concluded that Plaintiff had severe impairments due to "obesity and affective mood disorder" (TR. 20).  At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 20).  At step four, the ALJ found that Plaintiff lacked the residual functional capacity (RFC) to perform her past relevant work (PRW) (TR. 21).

2

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).   The ALJ considered the testimony of the VE and determined there were other jobs existing in significant numbers in the national economy which Plaintiff could perform (TR. 21). Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security and was therefore not entitled to DIB or SSI (TR. 22).

On appeal to this Court, Plaintiff alleges that the ALJ (I) erred by failing to properly evaluate the medical evidence; and (II) erred by failing to perform a proper analysis at step three.

## MEDICAL EVIDENCE OF MENTAL IMPAIRMENT

In July 2002 Plaintiff was examined by Haisam Al-Khouri, M.D., who reported that Plaintiff was cooperative with good eye contact; that her affect was restricted; and that her mood was irritable (TR. 139).   Dr. Al-Khouri also reported that Plaintiff was alert and oriented with intact memory; that she had decreased attention and concentration; and that she was in touch with reality and had no delusions, auditory hallucinations or visual hallucinations (TR. 139). Dr. Al-Khouri diagnosed Plaintiff as having "Bipolar II Disorder, most recent episode depressed without psychotic features" (TR. 139).   Dr. Al-Khouri further stated that Plaintiff's current GAF [1] "is around 45" (TR. 140).   Dr. Al-Khouri prescribed medications and scheduled a follow-up visit in six weeks (TR. 140).

---

[1]   A GAF represents Axis V of the Multiaxial Assessment system.  A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed. 1994), p. 30. The GAF score is taken from the GAF scale which "is to be rated with respect only to psychological, social, and occupational functioning." *Id*. The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 32. The GAF scale defines the range from 41 to 50 as follows:  Serious symptoms OR serious impairment in one of the following: social, occupational, or school functioning.

Plaintiff was examined by Adonis Al-Botros, M.D., in August, September and October 2002 (TR. 124, 122, 120).   Following each examination Dr. Al-Botros stated that Plaintiff was alert, oriented and cooperative; that her mood was not restricted; that her insight and judgment were intact; and that she had no delusions and no visual or auditory hallucinations (TR. 124, 122, 120). Dr. Al-Botros described Plaintiff's mood as being irritable in August 2002, mildly elevated in September 2002, and mildly anxious in October 2002 (TR. 124, 122, 120). Dr. Al-Botros assessed Plaintiff as having a GAF of 55 [2] in August 2002, a GAF of 55 in September 2002 and a GAF of "50-55" in October 2002 (TR. 124, 122, 120).   In October 2002 Dr. Al-Botros stated that Plaintiff's memory and concentration were "fair" (TR. 120).

In August 2003 Plaintiff was examined by her treating physician, Jahangir H. Ghaznavi, M.D., who found that she was well oriented with decreased attention and concentration; that she "may have decreased short-term memory"; and that she had "significant memory troubles with remote memory" which "could be secondary to her extreme abuse when she was a child and early adolescent" (TR. 260).   Dr. Ghaznavi diagnosed Plaintiff as having "Bipolar II Disorder, most recent episode depressed. Rule out PTSD versus Generalized Anxiety Disorder" and assessed Plaintiff as having a current GAF of 40 [3] (TR. 260). Dr. Ghaznavi also noted that Plaintiff was prescribed medication in the past and had done fairly well but that she had not been on medication for one year and was not on medication when he examined her (TR. 259).   Treatment records of Dr. Ghaznavi from Northrock Medication Clinic for 2004 show that Plaintiff was consistently medication compliant; that her speech was either normal or pressured; that she was well oriented and cooperative; and that she had no delusions or hallucinations (TR. 254, 252, 249, 244, 241).   During

---

[2]   The GAF Scale defines the range of 51-60 as follows: Moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).

[3]   The GAF Scale defines the range of 31-40 as follows:  Some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.*, depressed man avoids friends, neglects family, and is unable to work; child

2004, Dr. Ghaznavi described Plaintiff's mood as being one or more of the following: Normal, depressed, anxious or irritable (TR. 254, 252, 249, 244, 241). Dr. Ghaznavi described Plaintiff's affect as being either labile or appropriate; and described her physical appearance as either "neat/clean" or "appropriate" (TR. 254, 252, 249, 244, 241).

In September 2003 R.E. Smallwood, Ph.D., an agency physician, completed a Mental RFC Assessment, and stated that Plaintiff was "markedly limited" in her "ability to understand and remember detailed instructions; and in her ability to carry out detailed instructions (TR. 167). Dr. Smallwood, in his functional capacity assessment, opined that Plaintiff could "remember, understand and carry out simple, routine tasks"; and could "relate to coworkers & supervisors in the work setting" (TR. 169). Also in September 2003, Dr. Smallwood completed a Psychiatric Review Technique form (PRT) in which he concluded that Plaintiff had an affective disorder which produced the following functional limitations: Moderate restrictive limitations on Plaintiff's activities of daily living; moderate restrictions in maintaining social functioning; and moderate restrictions in maintaining concentration, persistence, or pace (TR. 198, 205).

## I.

Plaintiff argues that the ALJ erred by failing to properly evaluate medical evidence (See Plaintiff's Brief at pages 2-7). Specifically, she argues that the ALJ failed to properly consider the opinion of Plaintiff's treating physician, Dr. Ghaznavi, that Plaintiff had a GAF of 40 as well as the opinions of Plaintiff's treating physicians, Dr. Al-Botros and Dr. Al-Khouri who assessed Plaintiff as have a GAF of "50-55" and "around 45", respectively (TR. 120, 140).

A treating physician's opinion is entitled to great weight. *Williams v, Bowen*, 844 F.2d 748, 757-58 (10th Cir. 1988) (more weight will be given to evidence from a treating physician than to evidence from a consulting physician appointed by the Secretary or a physician who merely reviews medical records without examining the claimant); *Turner v. Heckler*, 754 F.2d 326, 329 (10th Cir. 1985). However, a treating physician's opinion may be rejected "if it is brief, conclusory, and

unsupported by medical evidence." *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).   If an ALJ

disregards a treating physician's opinion, he must set forth "specific, legitimate reasons" for doing

so.  *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

The ALJ ignored, without explanation, the opinions of Plaintiff's treating physicians, Drs.

Ghaznavi, Al-Botros and Al-Khouri that Plaintiff had a GAF which would affect her ability to maintain

employment.   Although a GAF has no direct correlation to a determination of disability and is not

binding on the Commissioner, it nevertheless, is a medical opinion offered by several of Plaintiff's

treating physicians and as such is entitled to due consideration and analysis.

Thus, remand is appropriate since the ALJ disregarded the opinions of Plaintiff's treating

physicians, without offering specific, legitimate reasons for doing so.

# II.

Plaintiff argues that the ALJ failed to perform a proper analysis at step three (TR. 7-8).   At

step three of the sequential evaluation process, a claimant's impairment is compared to the Listings

(20 C.F.R. Pt. 404, Subpt. P, App. 1).   If the impairment is equal or medically equivalent to an

impairment in the Listings, the claimant is presumed disabled.   A plaintiff has the burden of proving

that a Listing has been equaled or met.  *Bowen v. Yuckert*, 482 U.S. at 140-42 (1987); *Williams v.

Bowen*, 844 F.2d at 750-51 (10th Cir. 1988).   In his decision, the ALJ is "required to discuss the

evidence and explain why he found that [the claimant] was not disabled at step three."  *Clifton v.

Chater*, 79 F.3d 1007 (10th Cir. 1996).

It is apparent from the ALJ's decision that he failed in his duty to discuss the evidence and

explain why he found that Plaintiff was not disabled at step three.  *Clifton* at 1008.   The ALJ offers

only a conclusory statement that Plaintiff's "medically determinable impairments do not meet or

medically equal one of the listed impairments in Appendix 1, Subpart P, of Regulation No. 4" (TR.

20, 16).   The ALJ's meager discussion of the evidence is wholly inadequate.

In *Clifton* the ALJ did not discuss the evidence or his reasons for determining that the

claimant was not disabled at step three, or even identify the relevant listing. The ALJ merely stated a summary conclusion that the claimant's impairments did not meet or equal any listed impairment. In the present case the ALJ failed to discuss why the elements of the appropriate listing were not met in this case and further failed to identify the listing (TR. 16, 20). In short, the ALJ in this case made the same type of summary conclusion as the ALJ in *Clifton*. In *Clifton*, the Tenth Circuit held that such a bare conclusion was beyond any meaningful judicial review. *Clifton* at 1009.

In particular, the Tenth Circuit held as follows:

Under the Social Security Act,

[t]he Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. 405(b)(1). . . .

This statutory requirement fits hand in glove with our standard of review. By congressional design, as well as by administrative due process standards, this court should not properly engage in the task of weighing evidence in cases before the Social Security Administration. 42 U.S.C. 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). . . . Rather, we review the [Commissioner's] decision only to determine whether his factual findings are supported by substantial evidence and whether she applied the correct legal standards. . .

In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that [the claimant's] impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion. The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. . . . Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. . . . Therefore, the case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence at step three.

*Clifton*, at 1009-10 (internal case citations omitted).

The undersigned wishes to make it clear, however, that he is in no way expressing an opinion as to whether Plaintiff actually meets or equals a Listing.   Rather, the undersigned is simply recommending that this case be remanded so that the ALJ can adequately discuss his conclusion at step three.  Only then can this Court review the ALJ's decision in connection with the relevant listings.

The Commissioner argues that the ALJ's cursory treatment and conclusory language at step three should be excused as harmless error since the ALJ provided a sufficient rationale for his RFC findings (See Plaintiff's Brief at pages 5-6).   *Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005). Plaintiff's reliance on *Fischer-Ross*    is misplaced.   In *Fischer-Ross* the Court reasoned that

> To be sure, we apply harmless error analysis cautiously in the administrative review setting. But as we explained in ~~Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)~~, harmless error analysis "nevertheless may be appropriate to supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."

*Id* at 733-734.  As previously discussed the ALJ failed to adequately discuss several of the opinions of Plaintiff's treating physicians.   The Fisher-Ross case cannot apply here since the ALJ's did not consider those opinions.

### RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is **not** supported by substantial evidence and should be **REVERSED AND REMANDED for further administrative proceedings**. The parties are advised of their right to object to these findings and recommendation within twenty (20) days of the date of the filing hereof, in accordance with 28

U.S.C. §636 and Local Court Rule 72.1 (a). The parties are further advised that failure to make timely objection to these findings and recommendation waives their right to appeal from a judgment of the district court based upon these findings and recommendation. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

The foregoing Findings and Recommendation disposes of all issues referred to the undersigned magistrate judge in the above captioned matter.

ENTERED this the 18th day of September, 2006.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE